HON. RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENJAMIN DOEHR, ZACH SOLIZ, MITCHEL FEUER, KEVIN HOWARD, ANDRE HOWARD, MICHAEL CORDERO, ED MCDONALD, THEODORE HARKNESS, TIM KELLY, MAOR KRAMER, and CASEY GOODMAN, on behalf of themselves,

Plaintiffs,

vs.

LUCKY STRIKE ENTERTAINMENT CORPORATION (f/k/a BOWLERO CORP.); AMF BOWLING CENTERS, INC.; and LUCKY STRIKE ENTERTAINMENT LLC,

Defendants.

Case No. 2:26-CV-01535-RAJ

**DEFENDANTS LUCKY STRIKE ENTERTAINMENT CORPORATION (F/K/A BOWLERO CORP.) AND AMF BOWLING CENTERS, INC.'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

**NOTING DATE: SEPTEMBER 18, 2026**

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL ALLEGATIONS ..............................................................................................5

LEGAL STANDARD..........................................................................................................6

ARGUMENT .......................................................................................................................7

I.    PLAINTIFFS' PROPOSED MARKETS ARE FACIALLY UNSUSTAINABLE.............7

    A.    The Proposed Product Market Is Facially Unsustainable ........................................7

        1.    Plaintiffs fail to identify the product(s) at issue..........................................7

        2.    The proposed product market is too narrow, improperly turning on a single attribute and excluding obvious economic substitutes. ..................8

        3.    The proposed product market lumps together different products as one..............................................................................................................11

    B.    The Proposed Geographic Markets Are Facially Unsustainable ...........................13

        1.    The proposed geographic markets rest on a conclusory travel assertion and are drawn around Bowlero rather than the area of effective competition. ....................................................................................13

        2.    Undefined variables render each geographic market indeterminate..........16

        3.    The geographic markets fail due to unexplained competitor sets..............17

II.    PLAINTIFFS DO NOT ALLEGE ANTITRUST INJURY ...........................................17

    A.    All Claims Fail For Lack Of The Causation Required For Antitrust Injury..........17

    B.    All Claims Based on Supracompetitive Prices Fail ...............................................20

    C.    The Claims of Umbrella Classes And Plaintiff McDonald Fail ............................22

III.    PLAINTIFFS' SECTION 2 DAMAGES CLAIMS FAIL ...............................................23

IV.    PLAINTIFFS LACK STANDING FOR THEIR INJUNCTIVE RELIEF CLAIMS .....................................................................................................................23

V.    PLAINTIFFS' STATE LAW CLAIMS FAIL ................................................................25

    A.    Plaintiffs' State Law Claims Fall With Their Federal Claims..............................25

    B.    Plaintiffs Lack Standing to Bring Claims Under North Carolina and Florida Law Because No Named Plaintiffs Reside There ....................................27

    C.    Plaintiffs' North Carolina Claims Are Barred By The Statute Of Limitations............................................................................................................27

VI.    PLAINTIFFS' DIVESTITURE REQUESTS ARE BARRED BY LACHES .................28

VII.    PLAINTIFFS FAIL TO DIFFERENTIATE BETWEEN BOWLERO DEFENDANTS ...............................................................................................................29

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – i

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

VIII.  THE NATIONWIDE INJUNCTION CLAIMS AND CLASSES FAIL DUE TO LACK OF ARTICLE III STANDING .............................................................................29

IX.  SIXTEEN REGIONAL CLAIMS AND CLASSES FAIL DUE TO LACK OF STANDING BECAUSE THEY LACK A CLASS REPRESENTATIVE.......................30

X.  MANY REGIONAL CLAIMS AND CLASSES ARE TIME-BARRED........................31

CONCLUSION ..................................................................................................................32

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AliveCor, Inc. v. Apple Inc.*,
    592 F. Supp. 3d 904 (N.D. Cal. 2022) ....................................................................11

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
    592 F.3d 991 (9th Cir. 2010) ..............................................................................1, 2

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
    116 F. Supp. 2d 1159 (C.D. Cal. 2000) .....................................................22, 23, 28

*Arena Rest. & Lounge LLC v. Southern Glazer's Wine & Spirits, LLC*,
    2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) .....................................................14, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................6, 10, 13, 22

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).........................................................................................22

*Athos Overseas, Ltd. v. Youtube, Inc.*,
    2022 WL 910272 (S.D. Fla. Mar. 29, 2022).........................................................26

*Barry v. Blue Cross of Cal.*,
    805 F.2d 866 (9th Cir. 1986) ...............................................................................2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................1, 6, 16, 22

*Bird v. First Alert, Inc.*,
    2014 WL 7248734 (N.D. Cal. Dec. 19, 2014)........................................................24

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993).........................................................................................21

*Brown v. Dep't of Water & Power*,
    2025 WL 435747 (C.D. Cal. Jan. 29, 2025), *appeal filed*, *Brown v. Los
    Angeles Dep't of Water & Power*, No. 25-790 (9th Cir. Feb. 6, 2025) ......................8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)...........................................................................................1

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – iii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*CaptiveAire Sys., Inc. v. ITW Food Equip. Grp.*,
2009 WL 10676075 (W.D. Wash. Sept. 28, 2009)......................................................25

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986)................................................................................................17, 24

*Central Carolina Surgical Eye Assocs., P.A. v. Matthews*,
2022 WL 798335 (N.C. 2022)....................................................................................28

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ..............................................................................19, 21

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) ..................................................................................25, 26

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)......................................................................................................24

*City of San Jose v. Office of the Comm'r of Baseball*,
776 F.3d 686 (9th Cir. 2015) ......................................................................................25

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................................................................................................24

*Complete Ent. Resources, LLC v. Live Nation Ent., Inc.*,
2016 WL 3457177 (C.D. Cal. May 11, 2016) ............................................................31

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ....................................................................................31

*Consumer Def. Group v. Rental Hous. Indus Members*,
137 Cal. App. 4th 1185 (2006) ...................................................................................25

*Coronavirus Reporter v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) .............................................................................7, 8, 13

*Costco Wholesale Corp. v. AU Optronics Corp.*,
2014 WL 4723880 (W.D. Wash. Sept. 23, 2014) (Jones, J.).....................................22

*Cullis v. Tesla Inc.*,
2024 WL 4581655 (E.D. Cal. Oct. 25, 2024) ............................................................26

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)...............................................................................................27, 29

*Davis v. HCA Healthcare, Inc.*,
2022 WL 4354142 (N.C. 2022) ..................................................................................27

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – iv

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*De Los Santos v. Panda Exp., Inc.*,
  2010 WL 4971761 (N.D. Cal. Dec. 3, 2010)..................................................................30

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) .......................................................................30

*Dominick v. Collectors Universe, Inc.*,
  2012 WL 4513548 (C.D. Cal. Oct. 1, 2012)...................................................................20

*Eastman v. Quest Diagnostics Inc.*,
  108 F. Supp. 3d 827 (N.D. Cal. 2015) .........................................................................20

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*,
  2022 WL 3552392 (D. Ariz. Aug. 18, 2022)..................................................................23

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) .........................................................................................7

*Fenerjian v. Nongshim Co., Ltd.*,
  72 F. Supp. 3d 1058 (N.D. Cal. 2014) .........................................................................30

*In re Fertilizer Antitrust Litig.*,
  1983 WL 1832 (E.D. Wash. May 11, 1983)...................................................................22

*Flaa v. Hollywood Foreign Press Ass'n*,
  2021 WL 1399297 (C.D. Cal. Mar. 23, 2021).................................................................15

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) .......................................................................30

*Fluorofusion Specialty Chems., Inc. v. Chemours Co. FC, LLC*,
  2026 WL 483642 (E.D.N.C. Feb. 20, 2026)...................................................................27

*Fodera v. Equinox Holdings, Inc.*,
  2021 WL 1164799 (N.D. Cal. Mar. 26, 2021)................................................................30

*Forrett v. Gourmet Nut, Inc.*,
  634 F. Supp. 3d 761 (N.D. Cal. 2022) .........................................................................26

*Gibson v. Cendyn Group, LLC*,
  148 F.4th 1069 (9th Cir. 2025) ...............................................................................18, 21

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) .................................................................26

*Ginsburg v. InBev NV/SA*,
  623 F.3d 1229 (8th Cir. 2010) .....................................................................................28

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – v

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    433 F. App'x 598 (9th Cir. 2011) ...........................................................................11, 12, 13

*Hamilton v. NuWest Grp. Hldgs. LLC*,
    2023 WL 130485 (W.D. Wash. Jan. 9, 2023)......................................................................27, 30

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) .........................................................7, 9, 10, 11, 14

*Intel Corp. v. Fortress Inv. Group LLC*,
    2022 WL 16756365 (9th Cir. Nov. 8, 2022)......................................................................19, 21

*In re Interior Molded Doors Antitrust Litig.*,
    2019 WL 4478734 (E.D. Va. Sept. 18, 2019)..........................................................27

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) .................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ........................................................................26

*Laughlin v. Evanston Hosp.*,
    133 Ill. 2d 374, 550 N.E.2d 986 (1990) ................................................................26

*Little Rock Cardiology Clinic, P.A. v. Baptist Health*,
    573 F. Supp. 2d 1125 (E.D. Ark. 2008).................................................................15

*LiveUniverse Inc. v. MySpace*,
    304 Fed. App'x. 554 (9th Cir. 2008) ..............................................................25, 26

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................23, 29

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
    164 F.4th 710 (9th Cir. 2026) ............................................................................2

*Martin v. Tradewinds Beverage Co.*,
    2017 WL 1712533 (C.D. Cal. Apr. 27, 2017), *on reconsideration*, 2018 WL
    313123 (C.D. Cal. Jan. 4, 2018) ........................................................................24

*Midwestern Mach. Co. v. Nw. Airlines, Inc.*,
    392 F.3d 265 (8th Cir. 2004) ............................................................................31

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
    924 F.2d 1484 (9th Cir. 1991) ..........................................................................15

*Natkin v. Am. Osteopathic Ass'n*,
    2018 WL 452165 (D. Or. Jan. 17, 2018) ...........................................................8, 11

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – vi

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Neagle v. Goldman Sachs Grp., Inc.*,
  2019 WL 1102199 (D. Or. Mar. 1, 2019), *aff'd sub nom. Neagle v. Altisource
  Sols., Inc.*, 820 F. App'x 606 (9th Cir. 2020) ...................................................................23

*Newcal Indus., Inc. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2008) ..........................................................................................7

*Nicolosi Distributing, Inc. v. FinishMaster, Inc.*,
  2019 WL 1560460 (N.D. Cal. Apr. 10, 2019) ..................................................................17

*North v. Mirra*,
  2014 WL 345303 (W.D. Wash. Jan. 30, 2014)..................................................................29

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
  939 F. Supp. 2d 1002 (N.D. Cal. 2013) ......................................................................16, 17

*In re Packaged Seafood Prods. Antitrust Litig.*,
  277 F. Supp. 3d 1167 (S.D. Cal. 2017)......................................................................26, 27

*In re Park W. Galleries, Inc. Mktg. & Sales Practices Litig.*,
  2010 WL 2653253 (W.D. Wash. June 25, 2010)..............................................................27

*PBTM LLC v. Football Northwest, LLC*
  511 F. Supp. 3d 1158 (W.D. Wash. 2021)..............................................................8, 9, 10, 25

*Pool Water Products v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) .........................................................................................17

*Porcu v. Geico Gen. Ins. Co.*,
  2024 WL 3746271 (S.D. Cal. Aug. 9, 2024) ....................................................................24

*Portillo v. CoStar Grp., Inc.*,
  2025 WL 2495053 (W.D. Wash. Aug. 29, 2025).........................................................14, 19

*QSGI, Inc. v. IBM Glob. Fin.*,
  2012 WL 1150402 (S.D. Fla. Mar. 14, 2012)...................................................................26

*Rebel Oil Co. v. ARCO*,
  51 F.3d 1421 (9th Cir. 1995) .....................................................................................17, 18

*Reilly v. Apple Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ..............................................................10, 11, 15

*Resh, Inc. v. Skimlite Mfg. Inc.*,
  666 F. Supp. 3d 1054 (N.D. Cal. 2023) ...........................................................................29

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
  471 F. Supp. 3d 981 (N.D. Cal. 2020) .......................................................................28, 31

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – vii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Rx Solutions, Inc. v. Caremark, L.L.C.*
   164 F.4th 436 (5th Cir. 2026) ...................................................................................................14

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
   2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ........................................................................26

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .............................................................................................19, 21

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................................................26

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993)...................................................................................................................2

*Taleff v. Southwest Airlines Co.*,
   828 F. Supp. 2d 1118 (N.D. Cal. 2011) ..................................................................................28

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) .................................................................................................13

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).............................................................................................................23, 24

*U.S. Wholesale Outlet & Distribution, Inc. v. Living Essentials*,
   2025 WL 1513438 (C.D. Cal. May 28, 2025) ........................................................................25

*Unigestion Holdings, S.A. v. UPM Tech., Inc.*,
   412 F. Supp. 3d 1273 (D. Or. 2019) .........................................................................................8

*Williams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008) .................................................................................................30

*Wilson v. Inslee*,
   2022 WL 3094308 (E.D. Wash. Aug. 3, 2022) ......................................................................29

*Z Techs. Corp. v. Lubrizol Corp.*,
   753 F.3d 594 (6th Cir. 2014) ...................................................................................................31

*Zunum Aero, Inc. v. Boeing Co.*,
   2022 WL 3346398 (W.D. Wash. Aug. 12, 2022)..............................................................12, 13

*Zunum Aero, Inc. v. Boeing Co.*,
   2022 WL 2116678 (W.D. Wash. June 13, 2022)......................................................................15

## **Statutes**

15 U.S.C. § 15b...............................................................................................................................31

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – viii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

15 U.S.C. § 26....................................................................................................................24

N.C. Gen. Stat. § 75-16.2....................................................................................................27

Wash. Rev. Code § 19.86.920.............................................................................................25

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – ix

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

## PRELIMINARY STATEMENT

Plaintiffs, 11 individuals located in only five states, complain that Bowlero[1] has acted anticompetitively by employing a nationwide strategy across 23 different geographic regions throughout the U.S., based only upon their bare allegation that it acquired bowling centers. Plaintiffs' theory fails at the start, as the Complaint exudes a fundamental misunderstanding of the antitrust laws. Bowlero's strategy of acquiring bowling centers—the heart of the Complaint—is not inherently unlawful. Indeed, Congress "has condemned [mergers and acquisitions] only when they may produce anticompetitive effects." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487 (1977). The Complaint is replete with allegations advancing unviable antitrust theories—but these allegations, even if true, do not support any cognizable claim. Nevertheless, Plaintiffs seek the extraordinary remedy of divestiture for acquisitions dating back beyond the applicable statute of limitations (which also dooms several of Plaintiffs' claims). Taken together, Plaintiffs' flawed theory, conclusory allegations, and the exceptional relief sought undermine the core credibility of their claims. Despite the fact that Plaintiffs have filed a 333-paragraph, 11-count Complaint, not one cause of action is viable and none satisfy *Twombly*'s plausibility standard, warranting dismissal of this action in its entirety.

Plaintiffs contend a subset of Bowlero's acquisitions enabled anticompetitive conduct. But the alleged conduct they point to is ***procompetitive***. For example, Plaintiffs point to Bowlero's enhancements of its own bowling centers like lane-side ordering kiosks, on-demand tablet menus, large TV screens, and arcade games, Compl. ¶¶ 220-221, 233-235, as somehow wrongful. But product improvements are not anticompetitive conduct. Even a monopolist's "design change that improves a product by providing a new benefit to consumers does not violate Section 2 absent some associated anticompetitive conduct." *Allied Orthopedic Appliances Inc. v. Tyco Health Care*

---

[1] Consistent with the Complaint, Defendants Lucky Strike Entertainment Corporation (f/k/a Bowlero Corp.) and AMF Bowling Centers, Inc. are collectively referred to in this Motion as "Bowlero." Compl. ¶ 1. As explained *infra* Part VII, however, Plaintiffs' failure to differentiate between Defendants is improper. Defendant Lucky Strike Entertainment LLC is not associated with Bowlero.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Grp. LP*, 592 F.3d 991, 998–99 (9th Cir. 2010).  A product improvement is "tolerated by the antitrust laws"; there is "no room … for balancing the benefits or worth of a product improvement against its anticompetitive effects."  *Id.* at 1000.  Plaintiffs also, bizarrely, fault Bowlero for negotiating lower prices and volume discounts from its suppliers, and for securing exclusive products.  Compl. ¶¶ 71-73.  But "[s]eeking the lowest possible price for [inputs] is pro-competitive behavior."  *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 735 (9th Cir. 2026).  And Plaintiffs incredibly fault Bowlero for investing in a "serious marketing effort," Compl. ¶ 201, but promoting one's product to consumers is "procompetitive rather than anticompetitive."  *Barry v. Blue Cross of Cal.*, 805 F.2d 866, 872 (9th Cir. 1986).  Indeed, "[o]ne of the foundations of an ideal competitive market is the free flow of information to buyers and sellers."  *Id.*  While Plaintiffs may yearn to roll back the clock to simpler times, when bowling centers offered bowling and not much else, the antitrust laws are directed "not against conduct which is competitive," but instead "against conduct which unfairly tends to destroy competition itself."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).  That Bowlero has enhanced its centers, lowered its input costs, and advertised its offerings states no antitrust claims and, indeed, is procompetitive.

According to the Complaint, Bowlero operates only approximately 350 of the approximately 3,970 bowling centers in the US, just 8% of the total.  Compl. ¶¶ 43-44.  Because Plaintiffs cannot demonstrate anywhere close to alleged dominance in the U.S., they zoom in and allege 23 smaller areas as purported markets.  In doing so, they draw circles they contend show a "30-60 minute" radius around select parts of cities in the U.S., cherry-picked to try to show alleged dominance in "operating bowling centers."  *Id.* ¶¶ 79, 97-98.  For 20 of these geographic areas, Plaintiffs provide no information about the center point (and thus the boundaries) of the market or which competitors are included.  For the remaining three (of the 23) geographic areas, Plaintiffs offer a list of Bowlero and competitor centers that Plaintiffs allege comprise each market.  *Id.* ¶¶ 152-169.  Plaintiffs contend that they select "the acquired center(s)" and extend a radius "approximately one hour's driving time."  *Id.* ¶ 170.  Plaintiffs allege that Bowlero is dominating

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

that area.  But Bowlero recreated the maps Plaintiffs supplied, and judicially noticeable information shows that Plaintiffs omitted numerous competitors from each:  in Los Angeles they identified nine competitors but left out 21; in The Villages, they identified two competitors but left out six; and in Northern Virginia, they identified two competitors but left out eight.  Counting the omitted competitors would lower Bowlero's alleged market share and the resulting concentration, rendering Plaintiffs' share and HHI figures unreliable even for the three alleged markets they chose to illustrate.  This unreliability bleeds into the market share and HHI numbers Plaintiffs allege, without any backup, for the other 20 alleged markets.

To begin, Plaintiffs' claims under Section 7 of the Clayton Act and Section 2 of the Sherman Act (and their derivative state law claims) do not survive the most basic antitrust pleading requirements, which mandate pleading of a relevant product and geographic market and antitrust injury.

*First*, the proposed product market, "operating bowling centers," is not a product allegedly bought or sold by anyone in the Complaint, but even if it were, Plaintiffs do not define what are the actual products included in the proposed product market.  Moreover, the proposed product market is facially implausible because it is defined by a single attribute of the locations—bowling—and excludes obvious substitutes, such as other entertainment centers (*e.g.*, Dave & Buster's, Puttshack, Topgolf) and other corporate events activities (*e.g.*, private dining, museum or aquarium private events, escape rooms, cooking classes, happy hours, sporting events).  At the same time, Plaintiffs implausibly appear to include different types of bowling and non-bowling products, each with obvious substitutes, in the same product market.

*Second*, the 23 proposed geographic markets fare no better.  They rest on a bare factual assertion about how far bowlers will travel (30-60 minutes), which assertion becomes a bare legal conclusion that 30-60 minutes from every Bowlero constitutes a geographic market.  The 23 alleged geographic markets are supported by zero allegations explaining why they capture the effective area of competition.  Facially, they do not.  And in any event, the geographic market

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

boundaries, centers, and competitors are wholly undefined, depriving Bowlero of fair notice of Plaintiffs' claims.

*Third*, even if Plaintiffs pleaded a sufficient market, all claims still fail for lack of antitrust injury. Plaintiffs must plausibly allege that their purported antitrust injuries of supracompetitive prices and degraded quality flow from that which makes the conduct supposedly unlawful. Here, Plaintiffs claim that Bowlero's acquisitions allegedly lessened competition. But under the Complaint, the alleged harm flowed from a company-wide playbook applied to every Bowlero, regardless of location. Uniform practices imposed everywhere do not flow from the supposed lessening of competition in the 23 alleged markets. Further, Plaintiffs also allege obvious procompetitive explanations for the supposedly higher prices, including Bowlero's center enhancements and dynamic pricing. And the supracompetitive price allegations also fail as conclusory.

These are defects of legal theory, not missing facts, that an amended pleading cannot cure. A market built on a single product attribute cannot be repleaded into existence. A market drawn around Bowlero's own locations, rather than the area of effective competition, fails no matter how the boundaries are redrawn. And Plaintiffs' alleged antitrust injury which flows from company-wide practices will always fail, and repleading otherwise would contradict the Complaint.

The remaining claims also fail:

- Plaintiffs' Count Three for attempted monopolization must be dismissed because Plaintiffs do not have standing to allege damages for attempted monopolization—there is harm to consumers only when the defendants achieve a monopoly and can then charge supracompetitive prices.

- The injunction requests fail because Plaintiffs identify no future acquisitions to be enjoined.

- The state-law claims fall with the federal claims, and several fail for the additional reasons that no named Plaintiff resides in the relevant state, or the claims are time-barred.

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – 4

Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

- No named Plaintiff is alleged to have purchased anything in 16 of the 23 alleged geographic markets. Plaintiffs thus have no standing for the claims and the putative classes based on those markets.

- The nationwide classes fail because they sweep in consumers who bowled where Bowlero made no challenged acquisition and caused no alleged harm, and whose injuries thus are not traceable to the challenged conduct.

- All Counts in five markets (Reading, PA; Baltimore, MD; Richmond, VA; Charlotte, NC; and Jacksonville, FL) fail because every challenged acquisition closed outside the four-year limitations period for those markets. And the time for divestiture has long passed. Plaintiffs seek to divest acquisitions from *over seven years ago*, which would cause immeasurable prejudice given how long Bowlero has integrated these acquisitions into its operations.

These are also defects that repleading cannot cure. The Complaint should be dismissed with prejudice.

### FACTUAL ALLEGATIONS[2]

Plaintiffs are 11 individuals in five states, representing a subset of the alleged 23 geographic areas, who allegedly bowled at Bowlero or non-Bowlero centers (or both) over the last four years and paid higher prices. *Id.* ¶¶ 19-29. They allege that prices for bowling, food and beverage, league fees, and other "attachments" rose during this period, and that the quality of the experience declined. *See, e.g.*, *id.* ¶¶ 19, 22, 27, 220. They further allege that Bowlero's competitors also raised their own prices over the same period. *Id.* ¶¶ 24, 237.

Plaintiffs challenge acquisitions spanning almost eight years, many long since integrated or closed, yet Plaintiffs seek to unwind them all. The earliest challenged acquisition closed in October 2018, and the most recent in 2024. *Id.* ¶¶ 119, 112. Plaintiffs nonetheless ask the Court to unwind every one of the acquisitions, seeking divestiture of the acquired centers and of the "Professional Bowling [sic] Association." *Id.* ¶ 3; *see also id.* ¶ 332c. This remedy is sought even though not one of these acquisitions has been challenged by any government agency.

---

[2] Plaintiffs' allegations are accepted as true for purposes of this Motion only.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 5

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

To frame these acquisitions as anticompetitive, Plaintiffs define a single product market, "the market for operating bowling centers," *id.* ¶ 79, and 23 geographic markets, *id.* ¶¶ 99-122, each defined as the area "within 30 to 60 minutes of a Bowlero bowling center." *Id.* ¶ 98. Elsewhere, Plaintiffs state that they estimate market share in the geographic markets "comprised of bowling centers within approximately one hour's driving time of the acquired center(s)." *Id.* ¶ 170. Plaintiffs then allegedly measure the share in each alleged area by "dividing the number of lanes [Bowlero] operates by the total number of lanes in that market," despite conceding that market share changes "[w]hen shares are measured by revenues." *Id.* ¶ 145. However, Plaintiffs identify the specific centers and bowling lane counts comprising their alleged areas for only *three* of the 23 areas alleged: Los Angeles, The Villages in Florida, and Northern Virginia. *Id.* ¶¶ 152-169. For the remaining 20 geographic areas, Plaintiffs provide only bottom-line share and concentration figures, with no identification of which competitor centers were included or excluded, what Bowlero center(s) is the center point for their 30-60 minute geographic area radius, or even the rough contours of the geographic area. *Id.* ¶ 170.

Plaintiffs assert claims under Section 7 of the Clayton Act and Section 2 of the Sherman Act, parallel claims under the consumer-protection statutes of four states, and a series of nationwide, umbrella, and regional classes. *Id.* ¶¶ 240-244, 253-331.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations "merely consistent with" liability "stop[] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and legal conclusions are "not entitled to the assumption of truth." *Id.* at 678–79.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

## ARGUMENT

### I.     PLAINTIFFS' PROPOSED MARKETS ARE FACIALLY UNSUSTAINABLE

"A threshold step in any antitrust case is to accurately define the relevant market," *i.e.*, "the field in which meaningful competition is said to exist." *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023) (citations omitted). The relevant market is "the area of effective competition—*i.e.*, the arena within which significant substitution in consumption or production occurs." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 975 (9th Cir. 2023) (cleaned up). "A relevant market contains both a geographic component and a product or service component." *Id.* (citing *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018)). Failing to define either is "fatal to an antitrust claim." *Coronavirus*, 85 F.4th at 957.

Here, Plaintiffs' proposed product market and geographic markets are "facially unsustainable," requiring dismissal of all claims. *Hicks*, 897 F.3d at 1120.

### A.  The Proposed Product Market Is Facially Unsustainable

"First and foremost, the relevant market must be a product market." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). A properly defined product market must "encompass the product at issue as well as all economic substitutes for the product." *Coronavirus*, 85 F.4th at 956 (citation omitted). "The principle most fundamental to product market definition is 'cross-elasticity of demand,'" which measures "the extent to which consumers view two 'products [as] be[ing] reasonably interchangeable' or substitutable for one another." *Id.* at 955 (citations omitted) (alterations in original). A complaint that "does not attempt to demonstrate the cross-elasticity" of demand must be dismissed. *Id.* at 956.

#### 1.  *Plaintiffs fail to identify the product(s) at issue.*

The Complaint defines the product market as "the market for ***operating*** bowling centers." Compl. ¶ 79 (emphasis added). But Plaintiffs never identify the actual product(s) included.

*First*, "operating bowling centers" is not a product allegedly purchased or sold by anyone in the Complaint. This is not a case about service providers, like an apartment management company, where operation of the asset is the product. Given that no one is alleged to have paid

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

for or sold bowling center operation services, Plaintiffs have not alleged an actual "product" at issue. *See Coronavirus*, 85 F.4th at 956 (the product market must "encompass the product at issue") (citation omitted).

*Second*, even setting that aside, Plaintiffs have not identified the product(s) in their proposed product market. Many bowling centers have arcades and other activities like laser tag or billiards. *See, e.g.*, Compl. ¶ 43 (describing "rivals offer[ing] bowling alongside other entertainment activities like arcades and laser tag"). Bowling centers also offer food and beverages. *See, e.g.*, *id.* ¶¶ 13, 19, 22, 25, 26. Indeed, Plaintiffs complain about Bowlero "upselling" these "attachments," *id.* ¶ 220, and about centers hosting professional bowling events. *Id.* ¶ 207. Yet Plaintiffs' Complaint does not say whether purchases for arcade games, laser tag, food, or beverages, or hosting PBA events, are included in their proposed product market. This failure dooms all claims. *See, e.g.*, *Brown v. Dep't of Water & Power*, 2025 WL 435747, at *5 (C.D. Cal. Jan. 29, 2025) (granting dismissal where the "Plaintiff does not even establish what exactly 'the product at issue' is in this case"), *appeal filed*, *Brown v. Los Angeles Dep't of Water & Power*, No. 25-790 (9th Cir. Feb. 6, 2025); *Natkin v. Am. Osteopathic Ass'n*, 2018 WL 452165, at *9 (D. Or. Jan. 17, 2018) (granting dismissal where "the product market [is not] defined as being a doctor versus being an orthopedic surgeon versus being an orthopedic hand surgeon."); *Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 412 F. Supp. 3d 1273, 1285 (D. Or. 2019) (granting dismissal where product market was "not clear").

### 2. The proposed product market is too narrow, improperly turning on a single attribute and excluding obvious economic substitutes.

Plaintiffs' proposed product market of "operating bowling centers" also fails for a host of other reasons.

*First*, defining the market as "bowling centers" improperly defines the market by a single characteristic of the centers at issue, *i.e.*, bowling, when it must be defined by "cross-elasticity of demand," *i.e.*, by what products are "reasonably interchangeable" with or economic substitutes for bowling. *Coronavirus*, 85 F.4th at 955–56. In *PBTM LLC v. Football Northwest, LLC*, this Court

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

dismissed antitrust claims where the plaintiff defined its market around Seahawks merchandise bearing the number "12."  511 F. Supp. 3d 1158, 1180 (W.D. Wash. 2021).  The Court held that "courts regularly reject such *sui generis* arguments that the unique attributes of a product automatically signify that the product independently comprises a market or sub-market."  *Id.* at 1181.  And in *Hicks*, the Ninth Circuit reached the same result when professional golf caddies proposed product markets limited to endorsements and in-play advertising at golf tournaments. 897 F.3d at 1121.  The Circuit held both product markets "facially unsustainable" because they excluded the many other ways companies could reach the same consumers—television, magazines, websites, social media, clubhouse advertising—which were all reasonably interchangeable with the proposed products.  *Id.* at 1121–22; *PBTM*, 511 F. Supp. 3d at 1181–82. The number "12" was one attribute of certain Seahawks merchandise; in-play advertising was one format for reaching certain sports fans; and full-sized bowling lanes are one attribute of certain entertainment centers.  Plaintiffs here do not adequately address obvious substitutes and thus propose their product market in the same "facially unsustainable" way as in *PBTM* and *Hicks*.

*Second*, Plaintiffs' allegations of substitutability, Compl. ¶¶ 86-92, fail to account for obvious alternatives as to each consumer group.  For casual and family bowlers, *i.e.*, those who bowl for entertainment value, Plaintiffs have not shown why other entertainment options are not substitutes for bowling.  Every reason Plaintiffs offer for excluding alternative entertainment options assumes the consumer is a mixed-age family group:  Plaintiffs allege that laser tag and trampoline parks are unsuitable because "grandma or the infant and her parent must sit on the sidelines," *id.* ¶ 89; concerts are unsuitable because they "generally target a distinct age demographic," *id.* ¶ 91; and amusement parks require attendees to "walk long distances" and "wear bathing suits," *id.* ¶ 92.  For these mixed-age families, who allegedly make up a substantial portion of the relevant customer base, *id.* ¶ 88, Plaintiffs ignore comparably sized family entertainment centers like Dave & Buster's, Topgolf (entertainment center with golf instead of bowling), Puttshack (entertainment center with putt-putt instead of bowling), K1 Speed or Andretti's (entertainment center with indoor go-kart), or even centers like Miners Landing, all of which offer

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 9

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

food, beverages, games, and event space. Plaintiffs even acknowledge that bowling is often offered by both Bowlero and Bowlero's competitors "alongside other entertainment activities like arcades and laser tag" and bundled with food and beverages. Compl. ¶¶ 13, 43, 220 (Bowlero focuses on "food and beverage sales," and offers arcade games).[3] Plaintiffs have not "alleged facts explaining why [these] seemingly similar products [like Dave & Buster's, Topgolf, and Puttshack they] *excluded* from the market *are not substitutes* for those in the market." *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022) (emphases original).

Plaintiffs also wholly ignore several groups of consumers. Plaintiffs say nothing about why a corporate event planner, or a group of teenagers, friends, a couple on a date, or a group of casual adult bowlers, would not substitute from a bowling center (that often offers food, or drink, or arcade, or laser tag, or other entertainment), to a restaurant, a bar, an arcade, a Dave & Buster's, a Topgolf, a Puttshack, axe throwing, duckpin bowling, or a sporting event. *See Hicks*, 897 F.3d at 1121 (relying on "judicial experience and common sense" in rejecting market definition) (quoting *Iqbal*, 556 U.S. at 679).

And for "sport" bowlers, Plaintiffs' allegations attempting to address substitutability are a tautology: Plaintiffs allege that bowling is a sport, and "[o]ther sporting and entertainment options nearby a bowling center are not a reasonable substitute because they do not offer … bowl[ing]." *Id.* ¶ 87. That is the same single-attribute argument both *PBTM* and *Hicks* rejected: a product's unique attributes do not "automatically signify that the product independently comprises a market." *PBTM*, 511 F. Supp. 3d at 1181; *Hicks*, 897 F.3d at 1122 (holding that the "increased effectiveness" of a particular advertising format "would not place the advertising format in a distinct market" where companies could reach the same consumers through other formats). Bowling may be a "sport," Compl. ¶ 85, but so are pickleball, golf, darts, softball, cornhole, and

---

[3]   Paragraph 90 suggests that the market excludes "entertainment venues" offering "limited bowling" alongside arcades and similar activities. Yet Plaintiffs define the market as any center with "tenpin bowling play equipped with multiple lanes," Compl. ¶ 79, and they count Round1— an arcade-and-entertainment venue offering exactly that combination—as a market competitor when tallying shares in Los Angeles, *id.* ¶ 155.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

duckpin bowling.  Plaintiffs plead no facts establishing that a bowler who bowls for sport would not substitute to any of these obvious alternatives; instead, they assert that nothing else is bowling so nothing else is a substitute for bowling.

In sum, Plaintiffs have not plausibly alleged why the above seemingly similar products are not included in the market.  This failure is fatal.  *See, e.g.*, *Reilly*, 578 F. Supp. 3d at 1109; *AliveCor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 915–16 (N.D. Cal. 2022) (dismissing antitrust claims where the complaint did not allege why seemingly similar products were not reasonable substitutes); *Hicks*, 897 F.3d at 1122–23.

### 3.    *The proposed product market lumps together different products as one.*

Plaintiffs allege a single product market of "operating bowling centers," but Plaintiffs' allegations make clear that there are many types of bowling products and non-bowling products potentially at issue for different types of consumers (assuming the sale of such products are in the proposed market) ***and***, relatedly, many different types of bowling centers.

*First*, Plaintiffs allege that "[b]owling centers attract distinct types of customers … among others, family and casual bowlers, league bowlers, small groups, and corporate events."  Compl. ¶ 45.  The league bowlers pay a league fee for weekly bowling, and bowling centers pay to host professional bowling tournaments.  *See id.* ¶¶ 25, 206.  The corporate event planner purchases an event package (with bowling, food, and drinks).  *See id.* ¶ 19.  A group of casual bowlers may purchase a bowling-food-and-drink bundle for a night out, or just bowling on a weekday morning, or might be upsold with laser tag and arcade "attachments."  *Id.* ¶¶ 212, 224, 220.  To the extent that the sale of bowling is in the product market, *see supra* Part I.A.1, Plaintiffs have not "alleged facts explaining why" league bowling, casual bowling, corporate event bowling, and professional bowling "are substitutes for one another" and thus properly in the same product market.  *Reilly*, 578 F. Supp. 3d at 1109.  This overbreadth is fatal.  *See, e.g.*, *Natkin*, 2018 WL 452165, at *9 (dismissing where "the product market [is not] defined as being a doctor versus being an orthopedic surgeon versus being an orthopedic hand surgeon."); *Golden Gate Pharmacy Servs.*,

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – 11

Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Inc. v. Pfizer, Inc.*, 433 F. App'x 598, 599 (9th Cir. 2011) (affirming dismissal of "a relevant product market of 'the pharmaceutical industry'" due to lack of "any facts indicating that all pharmaceutical products are interchangeable for the same purpose").

*Second*, all bowling centers are not plausibly reasonably interchangeable with one another, yet all "bowling centers" are in the market. *See* Compl. ¶ 79 ("Bowling centers are locations for tenpin bowling play equipped with multiple lanes."). In *Golden Gate Pharmacy*, the Ninth Circuit affirmed dismissal where plaintiffs proposed "a relevant product market of 'the pharmaceutical industry'" but failed to plead "any facts indicating that all pharmaceutical products are interchangeable for the same purpose." 433 F. App'x at 599. This Court similarly dismissed claims in *Zunum Aero, Inc. v. Boeing Co.*, where the plaintiff grouped single-aisle jets, twin-aisle jets, regional jets, and turboprops into a single product market for "aircraft serving commercial air travel up to 1,500 miles." 2022 WL 3346398, at *8 (W.D. Wash. Aug. 12, 2022). Here, Plaintiffs have not pleaded any facts indicating that all centers with bowling are interchangeable for the same purpose, but have pleaded facts showing they are not so interchangeable.

The Complaint describes traditional bowling centers that "operate as much as community centers as entertainment venues," opening "as early as 9 a.m. to cater to lifelong senior bowlers" and providing "special deals for valued league bowlers." Compl. ¶ 7. These centers "often still feature the family-oriented offerings like discounts for seniors, family packs, and bargains for league bowlers that defined bowling for decades" and are "unique to their communities." *Id.* ¶ 44.

In stark contrast, Plaintiffs describe Bowlero converted locations: "night-club blacklights and extremely loud music," *id.* ¶ 14, with "black lights, [and] neon 'glow' lighting," *id.* ¶ 225; distracting "content" on "large screens" at the ends of lanes "playing loud music videos," *id.*; and "tablets" and "mobile ordering" that drive "non-Bowling offerings like food, beverage, and arcade games," *id.* ¶ 220. As one Plaintiff described it, a Bowlero location "felt more like a dark and loud nightclub than a welcoming and well-maintained bowling alley." *Id.* ¶ 22.

Even further afield, some bowling centers host professional bowling events, which are a "vital business partner" for those centers. *Id.* ¶ 207. This requires a "$35,000 minimum fee these

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

competitor centers have to pay the PBA to host a PBA Tour event in order to remain relevant and competitive in the eyes of local league bowlers." *Id.* ¶ 209. Some Bowlero centers do not even offer league bowling. *Id.* ¶ 19.

Just as "the pharmaceutical industry" could not serve as a product market because heart medication and antibiotics are not interchangeable, *Golden Gate Pharmacy*, 433 F. App'x at 599, "operating bowling centers" cannot serve as a product market when the facilities within it are starkly different. And just as in *Zunum*, Plaintiffs' allegations "impl[y] the opposite" of interchangeability by showing that the grouped facilities are vastly different from one another. 2022 WL 3346398, at *10.

## B. The Proposed Geographic Markets Are Facially Unsustainable

A geographic market defines "the area of effective competition in which buyers of these products can find alternative sources of supply." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). A failure to define one "is a proper ground for dismissing" an antitrust claim. *Id.*; *see also Coronavirus*, 85 F.4th at 957 (failure to define a relevant market is "fatal"). Plaintiffs propose 23 geographic markets, Compl. ¶¶ 99-122, each defined as a localized area "within 30 to 60 minutes of a Bowlero bowling center," *id.* ¶ 98.[4] Every one of them fails.

> ### 1. *The proposed geographic markets rest on a conclusory travel assertion and are drawn around Bowlero rather than the area of effective competition.*

"A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Here, Plaintiffs' proposed geographic markets all rest on a single, conclusory assertion: that

---

[4] The geographic market is later defined as "bowling centers within approximately one hour's driving time of the acquired center(s) in" each market. *Id.* ¶ 170. But Plaintiffs never specify which are the "acquired center(s)" or square this with their geographic market definition in Paragraph 98.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 13

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

consumers "are generally not willing to travel more than 30 to 60 minutes to go bowling."[5]  Compl. ¶ 97.  From this generic assertion, Plaintiffs attempt to establish 23 relevant, localized geographic markets, *id.* ¶¶ 99-122, "within 30 to 60 minutes of a Bowlero bowling center," *id.* ¶ 98.  This attempt doubly fails as conclusory.  As an initial matter, this is a conclusory factual assertion not entitled to the presumption of truth.  *See, e.g.*, *Portillo v. CoStar Grp., Inc.*, 2025 WL 2495053, at *5 (W.D. Wash. Aug. 29, 2025) (dismissing Sherman Act claim where plaintiffs' allegations amounted to "merely conclusory factual assertions"); *Arena Rest. & Lounge LLC v. Southern Glazer's Wine & Spirits, LLC*, 2018 WL 1805516, at *10–11 (N.D. Cal. Apr. 16, 2018) (disregarding list of alleged practices, *e.g.*, that "Defendants sold liquor to different parties at different prices," as "conclusory factual assertions" where plaintiffs pleaded no "specific instance" and failed to "explain their basis for believing" the practices occurred).  Moreover, the conclusory factual assertion is the sole basis for the conclusory legal conclusion that "within 30 to 60 minutes of a Bowlero bowling center" is a valid geographic market.  The conclusory nature of both the factual assertion and the legal conclusion premised on that factual assertion dooms all claims.

This case is similar to *Rx Solutions, Inc. v. Caremark, L.L.C.* where the Fifth Circuit affirmed dismissal because the complaint "contain[ed] no allegations supporting [the proposed] geographic market, beyond a generic assertion" and "merely offer[ed] the state and counties in which the parties do business."  164 F.4th 436, 443 (5th Cir. 2026).  So, too, here.  Plaintiffs merely identify some areas in which Bowlero bowling centers are found and then proffer the generic assertion that consumers will travel 30-to-60 minutes for bowling.  Compl. ¶¶ 98-122.  This conclusory factual assertion turned legal conclusion is facially unsustainable.  *Rx Solutions*, 164 F.4th at 443.

---

[5]  Paragraph 95 is also a bare conclusion that a SSNIP would be profitable without any factual elaboration.  *See Hicks*, 897 F.3d at 1122 (rejecting market definition where the plaintiffs "merely restate a [SSNIP] test for market definition without any factual elaboration").

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – 14

Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

The Complaint also purportedly applies *30-to-60-minute* radii from *all* Bowlero locations across all 23 markets, but it alleges no basis for treating them identically. Compl. ¶¶ 97-98. At the same time, however, the Complaint alleges that the markets are *60 minute* radii from all *acquired* Bowlero centers. *Id.* ¶ 170. Either way, the markets fail as Plaintiffs concede that "commuting patterns, traffic flows, and other local characteristics may cause some variation" in how far consumers will travel. *Id.* ¶ 97. Having admitted that travel behavior varies locally, it is facially unsustainable that 23 markets can be defined based on a single, uniform travel-time unsupported by any market-specific allegations. *See Reilly*, 578 F. Supp. 3d at 1109 (rejecting a geographic market asserted at a uniform scope without facts that the relevant commercial realities were the same throughout it or that buyers across it could "turn for alternate sources of supply" on equivalent terms) (citation omitted).

Making matters worse, Plaintiffs define each geographic market as an area "within 30 to 60 minutes of a Bowlero bowling center," Compl. ¶ 98, or 60 minutes of "acquired center(s)," *id.* ¶ 170. This also is facially unsustainable. "Where [a company] competes does not define the market," *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991), and Plaintiffs' inherent suggestion that "the location of market participants defines the geographic market … is supported neither by the law of economics nor the law of the Ninth Circuit," *Flaa v. Hollywood Foreign Press Ass'n*, 2021 WL 1399297, at *7 (C.D. Cal. Mar. 23, 2021) (citation omitted). This Court applied these principles in rejecting a proposed geographic market based on where the defendant "does business." *Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *8 (W.D. Wash. June 13, 2022); *see also Little Rock Cardiology Clinic, P.A. v. Baptist Health*, 573 F. Supp. 2d 1125, 1150 (E.D. Ark. 2008) (rejecting geographic market as "implausible on its face" even though up to 95% of patients within the defined area allegedly sought services from the defendant-hospital, where plaintiffs did not address where they "could practically turn for alternatives").

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – 15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

### 2.    *Undefined variables render each geographic market indeterminate.*

A geographic market must be defined with sufficient specificity to "enable the opposing party to defend itself effectively." *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1010 (N.D. Cal. 2013) (citation omitted).  And Plaintiffs must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (citation omitted) (ellipsis in original).

Even if Plaintiffs' geographic markets were not a legal conclusion built on a conclusory factual assertion, the markets still fail because they are wholly indeterminate—depriving Defendants of fair notice—in three separate ways.  *First*, Plaintiffs define the radius around each relevant market as travel "within 30 to 60 minutes of a Bowlero bowling center," Compl. ¶ 98, and elsewhere allege a 60-minute radius, *id.* ¶ 170.  But 30 to 60 minutes is a 100% variance that encompasses vastly different geographic areas.  *Second*, the travel conditions are undefined.  Plaintiffs do not specify whether travel is by car, subway, or bus.  In any event, a 30-minute drive from Lucky Strike Hollywood at 10 a.m. on a Tuesday reaches a very different competitive set than at 6 p.m. on a Friday.  A market boundary that shifts hourly is no boundary at all.  *Third*, the center point for each alleged market is undefined.  Paragraph 98 defines markets "within 30 to 60 minutes of a Bowlero bowling center," but, as alleged, Bowlero operates multiple centers in every alleged area, so from which Bowlero are Plaintiffs measuring?  Plaintiffs never specify.

The alleged Seattle area illustrates this problem.  Plaintiffs identify two Bowlero locations that were purportedly illegally acquired, Garage Billiards & Bowl and Lucky Strike Bellevue. Compl. ¶ 104.  They assert market share increased from 36% to 42% and HHI from 2,020 to 2,440. *Id.* ¶ 170.  But the Complaint does not identify:  (1) an approximate geographic area, (2) if the geographic area is bound by a 30 or a 60 minute radius, (3) if it is starting from Garage Billiards (Seattle) or Lucky Strike (Bellevue), (4) which competitor bowling centers were included in Plaintiffs' analysis, or (5) lane counts.  Defendants are left to guess at how Plaintiffs' supposed calculations were made, which fails *Twombly*'s "fair notice" requirement.  550 U.S. at 555; *see also Orchard Supply*, 939 F. Supp. 2d at 1010 ("Plaintiff's definition of the relevant geographic

market—'various regional markets in California and Oregon where [defendant] and other retail sellers of power tools compete against one another'—is vague and conclusory.").

### 3. The geographic markets fail due to unexplained competitor sets.

The Complaint does not provide any competitors or lane counts for 20 of the alleged markets. It only provides competitor lists with some named centers and lane counts for three of the 23 alleged markets: Los Angeles, Compl. ¶¶ 152-157; The Villages in Florida, *id.* ¶¶ 158-163; and D.C.-Maryland-Virginia, *id.* ¶¶ 164-169. Even worse, without explanation, Plaintiffs *exclude* competitors within their own purported geographic markets. For the Los Angeles market, for which Plaintiffs purportedly included all competitors within an hour of any location acquired by Bowlero, *see id.* ¶ 170, judicially noticeable information reveals Plaintiffs excluded *21* competitors. *See* Ex. A.[6] For the Florida market, Plaintiffs excluded six competitors. *See* Ex. B. For the Washington-Arlington-Alexandria, DC-VA-MD-WV MSA, Plaintiffs inexplicably excluded Washington, D.C., *see* Compl. ¶ 164, and eight competitors, *see* Ex. C. *See Nicolosi Distributing, Inc. v. FinishMaster, Inc.*, 2019 WL 1560460, at *5 (N.D. Cal. Apr. 10, 2019) (rejecting proposed geographic markets defined by specific counties, where the plaintiff offered "no reason to exclude other neighboring counties" that contained competitors).

## II.    PLAINTIFFS DO NOT ALLEGE ANTITRUST INJURY

### A.    All Claims Fail For Lack Of The Causation Required For Antitrust Injury

For their federal claims, Plaintiffs must plausibly allege "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109 (1986) (emphasis original and citation omitted). "If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury…." *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001) (quoting *Rebel Oil Co. v. ARCO*, 51

---

6  These identified competitors are all "bowling centers" as defined by Plaintiffs. These facts are judicially noticeable as set forth in Bowlero's Request for Judicial Notice filed with this Motion.

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – 17

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

F.3d 1421, 1433 (9th Cir. 1995)).  Plaintiffs' claimed injuries are paying higher prices following the challenged acquisitions, *see, e.g.*, Compl. ¶¶ 211, 220, 223, 237-238, and degraded quality, *see, e.g.*, *id.* ¶¶ 210, 223.  "Here, Plaintiffs confuse cause and effect—higher prices [and degraded quality] can be a possible *result* of anticompetitive behavior, but charging a higher price [and degraded quality] by itself is not anticompetitive."  *Gibson v. Cendyn Group, LLC*, 148 F.4th 1069, 1088 (9th Cir. 2025) (emphasis original).  Indeed, Bowlero is alleged to operate over 360 centers, yet the Complaint identifies less than 100 centers within the alleged 23 markets at issue.  That the same playbook runs across the 260 plus centers outside the alleged markets confirms a national strategy untethered to market power and pushes the Complaint's causal theory far away from plausibility into mere possibility.

That is, each of the practices Plaintiffs allege is an undifferentiated, broad corporate strategy; none is specific to the 23 proposed geographic markets.  Plaintiffs quote a Bowlero executive's 2022 statement that the company was "raising price ***on everything***," Compl. ¶ 210.  Plaintiffs then allege:  a company-wide dynamic-pricing system whose inputs are demand factors like time, date, weather, and major events, *id.* ¶¶ 214-216; a practice of pooling customer data "***across its properties***" to "personalize marketing and pricing," *id.* ¶ 135; a renewed food-and-beverage upselling focus that drove the food-and-beverage-to-bowling spend ratio up "***across the company***," *id.* ¶¶ 220-222; an exclusive lane-oil arrangement under which Bowlero replaced the nine oils previously used "***in its bowling centers***" with two oils, *id.* ¶ 72; a general practice of reduced lane conditioning and maintenance, *id.* ¶ 227; cost cuts to "security and maintenance staff" "***at its centers***," *id.* ¶ 228; reductions targeting Bowlero's "least profitable operating hours," *id.* ¶ 224; rescheduling of league play away from weekend "premium times," *id.* ¶¶ 217, 225; the standardized atmospherics of loud music, black lights, and large video screens, *id.* ¶ 225; and a phone application rolled out "***throughout the network***," *id.* ¶¶ 234-235.  ***Not one*** of these alleged price or quality degradation practices is alleged to vary with Bowlero's market share in any geography or be confined to the 23 alleged markets.  Indeed, Plaintiffs fault "Bowlero's

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 18

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*nationwide* scale" and "a single *national* marketing campaign *benefitting all* of its hundreds of centers." *Id.* ¶ 183.  (All emphases added.)

A complaint tying injury to lost competition would allege, for example, that prices rose or quality degraded more in markets where Bowlero acquired a rival than in markets where it did not; that such changes tracked the size of the alleged market share gained in a given market; or that prices climbed or quality degraded only after an acquisition rather than uniformly across centers Bowlero had long operated.  Plaintiffs allege none of this.

Plaintiffs give examples of Bowlero acquiring centers and then supposedly raising prices.  Compl. ¶¶ 172-180.  Those examples are consistent with the remainder of the Complaint in which (as set forth above) Plaintiffs allege that Bowlero applies a company-wide playbook at all centers, which results in raised prices and reduced quality.  In any event, the allegations of increased prices are conclusory.  Plaintiffs assert that consumers in 19 of the listed MSAs were left "facing higher prices that they generally could not avoid if they wanted to continue to bowl," *id.* ¶ 174, that closures in three of the 23 alleged markets let Bowlero "force consumers" to a remaining center and charge "much more," *id.* ¶¶ 177, 179-180, and that prices "rose within a year" of one acquisition, *id.* ¶ 175.  These conclusory allegations, which are consistent with the alternative explanation that Bowlero simply applied a company-wide playbook in purportedly raising prices, are not entitled to the assumption of truth.  *See Portillo*, 2025 WL 2495053, at *5; *Arena Rest.*, 2018 WL 1805516, at *10–11.

In sum, "from the face of the operative complaint there are obvious alternative explanations for the alleged price increase [and degraded quality]." *Intel Corp. v. Fortress Inv. Group LLC*, 2022 WL 16756365, at *2 (9th Cir. Nov. 8, 2022) (citing *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013)).  "To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true…." *Id.* at 1108.  Plaintiffs' allegations do not tend to exclude the innocent explanation that their alleged

Bowlero Defs' Mot. to Dismiss
(Case No. 2:26-cv-01535-RAJ) – 19

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

injury flowed from Bowlero's company-wide strategies applied to all 350 centers—not the alleged lessening of competition in each of the 23 alleged markets.

### B.    All Claims Based on Supracompetitive Prices Fail

Even setting that aside, Plaintiffs' claims based on higher prices nevertheless fail. Plaintiffs attempt to allege supracompetitive prices, but Plaintiffs' allegations are not plausible given they never allege competitive pricing. *See, e.g.*, *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 835 (N.D. Cal. 2015) (finding lack of antitrust injury where the plaintiffs "have not alleged what Quest's prices are or how they compare to competitive prices"). Supposedly "'artificially high' prices cannot be equated to supracompetitive prices unless a plaintiff provides evidence to the contrary." *Dominick v. Collectors Universe, Inc.*, 2012 WL 4513548, at *7 (C.D. Cal. Oct. 1, 2012) (citation omitted).

Plaintiffs' attempts to show supracompetitive prices are all conclusory. For 19 of the 23 alleged markets, Plaintiffs just state that "[c]onsumers in all the alleged markets have paid higher prices." *Id.* ¶ 211. For the remaining four markets—Wichita, *id.* ¶ 211; Seattle, *id.* ¶ 212; New York, *id.* ¶¶ 21-22; and the Washington, D.C. area, *id.* ¶ 26—Plaintiffs identify prices with little-to-nothing more. The New York, Seattle, and Washington examples recite only a current charge for bowling, with no allegation of what the price had been before, when it changed, or against what period any increase is measured. The one magnitude estimate, that prices "doubled" or "tripled," is not tethered to any specified centers and based on a vague time period of "since Bowlero acquired" unspecified centers. *Id.* ¶ 27. Further, the "tripling" is expressly confined to "surge prices," which are ***demand-based dynamic*** pricing (*i.e.*, pricing that changes constantly based on demand) rather than any exercise of market power, *id.* ¶¶ 27, 218. Only the Wichita example offers a rough before-and-after, *id.* ¶ 211. Finally, Plaintiffs recognize the importance of corporate events, *see id.* ¶ 19 (alleging that Bowlero cancelled league bowling "to make room for corporate events"); *id.* ¶ 45 (recognizing that "Bowling centers attract … corporate events"), but plead zero allegations of supracompetitive (or increased) prices as to that type of bowling consumer.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 20

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

In sum, a handful of undated, unbaselined, surge-inflated prices, which are drawn from a small fraction of the 23 markets, is not sufficient to establish supracompetitive prices anywhere, *let alone in all 23 markets for four years*. *See, e.g.*, *Intel Corp.*, 2022 WL 16756365, at *2 ("Because price increases can be the natural result of growing demand (or increasing marginal costs), '[e]ven in a concentrated market, the occurrence of a price increase does not in itself permit a rational inference of … supracompetitive pricing.'" (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993) (alterations in original))).

Strengthening this conclusion, Plaintiffs provide obvious, procompetitive explanations for the supposed price increases. Plaintiffs allege that Bowlero invested in a series of enhancements to its centers, including "revamped menus," "mobile ordering [and] tablets," and on-demand menus at each lane. Compl. ¶¶ 220, 233. Such product improvements naturally explain higher prices and cannot support an inference of supracompetitive pricing. *See Intel*, 2022 WL 16756365, at *2 ("from the face of the operative complaint there are obvious alternative explanations for the alleged price increase") (citing *Somers*, 729 F.3d at 965; *Century Aluminum*, 729 F.3d at 1108). Plaintiffs' allegations confirm that the challenged prices reflect demand-based dynamic pricing, not lessening of competition. Plaintiffs allege that Bowlero's pricing turns on "time of day," "external factors like weather or major events," demand at "premium times" *id.* ¶¶ 215, 218, and that Bowlero pools customer data across its properties to "personalize marketing and pricing," *id.* ¶ 135. Plaintiffs' principal example of higher prices, a $418.90 holiday quote, is alleged to be "more than double" the off-peak price "[b]ecause Bowlero's algorithm knew its centers would see more demand during the winter holidays." *Id.* ¶ 218. (That price is also *not* alleged to be in a relevant market.) Demand-driven, personalized price variation is the natural result of fluctuating demand, not the lessening of competition. *See Gibson*, 148 F.4th at 1083 (recognizing that dynamic pricing/revenue-management software is "a tool in the struggle for commercial advantage" and that pricing to maximize profits "is how one competes"). Allegations equally consistent with procompetitive innovations and demand-based, personalized pricing do not nudge Plaintiffs' supracompetitive-price theory across the line from possible to plausible.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 21

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

### C.    The Claims of Umbrella Classes And Plaintiff McDonald Fail

Plaintiffs plead two nationwide "umbrella" classes of individuals who did not even purchase from Bowlero in the alleged 23 relevant markets:  the "Nationwide Damages Class," Compl. ¶ 242, and the "Nationwide Umbrella Damages Class," *id.* ¶ 243.  Plaintiffs' theory is that Bowlero "created a 'price umbrella' or market situation where [ ] competitors of the defendants were able to raise their prices." *In re Fertilizer Antitrust Litig.*, 1983 WL 1832, at *2 (E.D. Wash. May 11, 1983).  These "umbrella" classes fail as conclusory.  Plaintiffs do not name a non-Bowlero center that raised a price, a price that rose, or a mechanism tying any acquisition to any competitor's decision.  Plaintiffs offer conclusions as examples.  For Philadelphia and Wichita, Plaintiffs allege only that unnamed "competitors" raised unspecified prices at an unspecified time, *id.* ¶ 238.  For Cordero, the lone named Plaintiff asserting an umbrella injury, Plaintiffs allege merely that nearby centers raised prices "drafting off of Bowlero's increased prices," *id.* ¶ 24. Those are conclusions not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 678.  What remains are claims that are insufficient to support a plausible inference of anticompetitive causation.  *Twombly*, 550 U.S. at 557.  The umbrella claims thus fail for lack of antitrust injury, and the classes predicated on them fail too.  (Since these classes span all markets, they do not apply to the state law claims, but if they did, they fail for the reasons provided in Part V.)

Moreover, permitting these "umbrella" classes would violate the longstanding principle that the antitrust laws do not afford a remedy to those injured only indirectly.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 541–42 (1983).  Even if the allegations do not fail as conclusory, the alleged injury is too attenuated and the umbrella purchases lack standing as indirect purchasers.  *See, e.g.*, *Costco Wholesale Corp. v. AU Optronics Corp.*, 2014 WL 4723880, at *3–4 (W.D. Wash. Sept. 23, 2014) (Jones, J.) (rejecting umbrella standing for direct purchases from entities "who were neither conspirators nor in a control relationship with conspirators"); *Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1168–69 (C.D. Cal. 2000) (rejecting umbrella standing per *AGC*) (citation

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 22

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

omitted); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 912 (N.D. Cal. 2019) (no standing under *AGC* because umbrella plaintiffs "have not sufficiently alleged a chain of causation").

Finally, Plaintiff McDonald must be dismissed because his only individualized injury rests on the 2021 acquisition of the Vacaville center.  *See* Compl. ¶¶ 25, 63.  But Vacaville is not included in any relevant market, *see id.* ¶¶ 99-122, Regional Class, *see id.* ¶ 244, or challenged Acquisition, *see id.* ¶¶ 255, 278.  An injury traceable only to an unchallenged acquisition is not "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

### III.   PLAINTIFFS' SECTION 2 DAMAGES CLAIMS FAIL

Even if Plaintiffs survive the above, Plaintiffs do not have standing to pursue damages for attempted monopolization in Count Three because there has been no anticompetitive conduct harming them.  That is, "higher prices paid by consumers in an attempted monopolization, as [the Plaintiff] alleges here, are not injuries the antitrust laws were designed to prevent." *Neagle v. Goldman Sachs Grp., Inc.*, 2019 WL 1102199, at *12 (D. Or. Mar. 1, 2019), *aff'd sub nom. Neagle v. Altisource Sols., Inc.*, 820 F. App'x 606 (9th Cir. 2020).  As another court explained:

> The proverbial catch-22 is this: if [the defendant] charged higher rates *after* achieving monopoly, there is antitrust claim for monopolization but not attempted monopolization because [the] monopoly has already been accomplished. If [the defendant] charged higher rates *before* achieving a monopoly, there [is] still no claim for attempted monopolization because charging higher than competitive rates in an open market is not monopolistic—in fact, it makes achieving a monopoly harder. Thus, bringing an attempted monopolization claim for supracompetitive rates is inherently flawed.

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 2022 WL 3552392, at *8 (D. Ariz. Aug. 18, 2022) (emphasis original).  As consumers alleging attempted monopolization, Plaintiffs have no standing, and Count Three must be dismissed.

### IV.   PLAINTIFFS LACK STANDING FOR THEIR INJUNCTIVE RELIEF CLAIMS

Plaintiffs seek an extraordinary remedy:  "a prohibition on further acquisitions in bowling and adjacent markets."  Compl. ¶ 3.  But Plaintiffs must "demonstrate standing for each claim that

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 23

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

they press and for *each form of relief* that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphasis added).  Injunctive relief like that requested here is available only where a plaintiff pleads "a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation omitted).  That injury must be "certainly impending," not merely theoretical.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).  Section 16 of the Clayton Act codifies this requirement by authorizing injunctive relief only where there is "threatened loss or damage."  15 U.S.C. § 26; *Cargill*, 479 U.S. at 111–13 (Section 16 plaintiff must show a significant threat of *antitrust* injury).  Likewise, under the UCL, the plaintiff must "plead [ ] facts showing an immediate threat of a future injury that is certainly impending." *Porcu v. Geico Gen. Ins. Co.*, 2024 WL 3746271, at *4 (S.D. Cal. Aug. 9, 2024).

Consistent with this precedent, courts hold that Plaintiffs lack standing to enjoin future conduct unless they plead an imminent impending harm from the allegedly wrongful conduct.  *See Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533, at *6 (C.D. Cal. Apr. 27, 2017), *on reconsideration*, 2018 WL 313123 (C.D. Cal. Jan. 4, 2018) (dismissing injunctive relief request "because Plaintiff does not allege that she would purchase Defendant's [product] again in the future"); *Bird v. First Alert, Inc.*, 2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014) ("A plaintiff who has no intention of purchasing a product in the future has no standing to seek prospective injunctive relief."); *Porcu*, 2024 WL 3746271, at *4 (dismissing UCL claim).

Plaintiffs fail to plead any immediate threat of injury as they do not allege any impending acquisition that could violate Section 7 or the UCL.  Taking this a step further, as is required, they also do not (and cannot) plead any intent to make purchases in the future at bowling centers (or centers in "adjacent markets") that Bowlero has not acquired and that Plaintiffs have not identified.  Thus, the claim for injunctive relief and the injunctive relief classes should be dismissed.  *See Martin*, 2017 WL 1712533, at *6.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 24

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# V.    PLAINTIFFS' STATE LAW CLAIMS FAIL

## A.  Plaintiffs' State Law Claims Fall With Their Federal Claims[7]

***Washington***.  The WCPA requires courts to be "guided by . . . interpretation given by the federal courts" to corresponding federal statutes.  Wash. Rev. Code § 19.86.920.  This Court has accordingly dismissed WCPA claims alongside federal antitrust claims.  *See PBTM*, 511 F. Supp. 3d at 1178–82 (W.D. Wash. 2021) (dismissing WCPA and Sherman Act claims for failure to plead relevant product market); *CaptiveAire Sys., Inc. v. ITW Food Equip. Grp.*, 2009 WL 10676075, at *5 (W.D. Wash. Sept. 28, 2009) (same).

***California***.  Plaintiffs' Unfair Competition Law ("UCL") claim fails for many reasons.  The Ninth Circuit has squarely held that "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason — because it unreasonably restrains competition and harms consumers — the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."  *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015) (alteration original) (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)).  Plaintiffs' UCL claims assert both the "unlawful" prong (predicated on Clayton Act and Sherman Act violations, Compl. ¶ 305), and the "unfair" prong, *id.* ¶ 306.  The "unlawful" prong fails because the predicate federal violations have not been established.  And the "unfair" prong fails because it "will rise and fall together" with the federal antitrust claims.  *U.S. Wholesale Outlet & Distribution, Inc. v. Living Essentials*, 2025 WL 1513438, at *5 (C.D. Cal. May 28, 2025) (citing *Consumer Def. Group v. Rental Hous. Indus Members*, 137 Cal. App. 4th 1185, 1220 (2006) (dismissing UCL claim where predicate claims were dismissed); *LiveUniverse Inc. v. MySpace*, 304 Fed. App'x. 554, 557–58 (9th Cir. 2008) ("Where ... the same conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair competition claim [under the

---

7  The Prayer for Relief mentions a Nebraska statute, but that statute appears nowhere else in the Complaint.  No claim has thus been pleaded based on that statute.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 25

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

UCL], a finding that the conduct is not an antitrust violation precludes a finding of unfair competition"); *Chavez*, 93 Cal. App. 4th at 375)).  And because Plaintiffs have not alleged that or how Bowlero's "practices are unfair under the [UCL's] balancing test." *Cullis v. Tesla Inc.*, 2024 WL 4581655, at *5 (E.D. Cal. Oct. 25, 2024).

Moreover, because the UCL provides only equitable relief, *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1146–49 (2003)), a UCL claim must be dismissed where the "complaint does not allege that" the plaintiff "lacks an adequate legal remedy." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Plaintiffs seek damages in this action, and their UCL claims fail to allege—much less explain why—legal remedies (damages) are inadequate, dooming them.  *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 768–69 (N.D. Cal. 2022) (dismissing UCL claim on this basis); *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020) (same).

*Florida*.  Plaintiffs' FDUTPA claim is predicated on the same alleged federal antitrust violations.  Compl. ¶ 313.  "Because Plaintiff[s'] antitrust claim fails, so too does [their] FDUTPA claim."  *Athos Overseas, Ltd. v. Youtube, Inc.*, 2022 WL 910272, at *4 (S.D. Fla. Mar. 29, 2022) (citing *QSGI, Inc. v. IBM Glob. Fin.*, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012) ("When, as here, a plaintiff's FDUTPA claim is based on the same allegations as its antitrust claim, failure to establish a violation of antitrust law is sufficient to conclude that the plaintiff has also failed to state a FDUTPA claim.")).

*Illinois*.  Plaintiffs' Illinois claims fail because they are likewise predicated on the same alleged federal violations, Compl. ¶ 318, and because the ICFA is not an enforcement mechanism for antitrust laws.  *See Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, 390, 550 N.E.2d 986, 993 (1990) ("There is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust enforcement mechanism."); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1178 (S.D. Cal. 2017) (relying on *Laughlin* in dismissing plaintiffs' consumer protection claim under Illinois law where the claim was based on the same set of conduct

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 26

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

as their asserted antitrust claims); *In re Interior Molded Doors Antitrust Litig.*, 2019 WL 4478734, at *21 (E.D. Va. Sept. 18, 2019) (same).

*North Carolina*. Plaintiffs' North Carolina claims are similarly derivative. Compl. ¶ 328. The North Carolina Supreme Court has instructed that "federal decisions under the Sherman Act are instructive in evaluating claims under [NCUDTPA]." *Davis v. HCA Healthcare, Inc.*, 2022 WL 4354142, at *9 (N.C. 2022). Where a court "finds no Sherman Act violation" and "Plaintiffs depend on the allegations related to their Sherman Act claims" to "carry their Unfair and Deceptive Trade Practices Act claims," Plaintiffs similarly "fail to state a [NCUDTPA] claim." *Fluorofusion Specialty Chems., Inc. v. Chemours Co. FC, LLC*, 2026 WL 483642, at *8 (E.D.N.C. Feb. 20, 2026).

## B. Plaintiffs Lack Standing to Bring Claims Under North Carolina and Florida Law Because No Named Plaintiffs Reside There

Plaintiffs' North Carolina and Florida state law claims fail because no named Plaintiff resides in either state. "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). This Court addresses standing issues regarding named plaintiffs at the pleading stage. *See Hamilton v. NuWest Grp. Hldgs. LLC*, 2023 WL 130485, at *3–4 (W.D. Wash. Jan. 9, 2023) (declining to "postpone consideration until class certification" and dismissing claims under state laws where plaintiffs were not alleged to work or have been injured because "the class representative has the burden of proving Article III standing" (citation omitted)); *In re Park W. Galleries, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 2653253, at *9 (W.D. Wash. June 25, 2010) (granting motion to dismiss state law claims on basis of standing due to no named plaintiff from the states whose law was the basis of the claims). Accordingly, Counts Eight and Eleven must be dismissed.

## C. Plaintiffs' North Carolina Claims Are Barred By The Statute Of Limitations

Plaintiffs' North Carolina Count Eleven claims also fail because they are barred by a four-year statute of limitations. *See* N.C. Gen. Stat. § 75-16.2. Here, the only facts that Plaintiffs allege occurred in North Carolina were the "Charlotte Acquisitions" in October 2018 and September

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 27

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

2021, Compl. ¶ 119—both closed prior to May 2022, four years before this action was filed. Since Plaintiffs' "UDTPA claim is based on conduct occurring more than four years before it filed the [May 6, 2026] Complaint, the claim is time-barred and must be dismissed." *Central Carolina Surgical Eye Assocs., P.A. v. Matthews*, 2022 WL 798335, at *10 (N.C. 2022).

## VI.    PLAINTIFFS' DIVESTITURE REQUESTS ARE BARRED BY LACHES

Divestitures are an "extreme remedy." *Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118, 1123 (N.D. Cal. 2011) (citation omitted). When "Plaintiffs delay[ ] in filing their suit until after Defendants' merger had already been consummated, the remedy of divestiture is now unavailable to Plaintiffs." *Id.* at 1124 (dismissing claim for divestiture when acquisition was consummated on May 2, 2011 and plaintiffs filed suit on May 3, 2011); *Garabet*, 116 F. Supp. 2d at 1173 (divestiture unavailable where plaintiffs brought suit *on the day* the merger was consummated); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010) (no divestiture where private plaintiffs brought suit "nearly two months" after merger announced).

Laches bars Plaintiffs' divestiture requests here. Plaintiffs challenge acquisitions made by Defendants dating back *over seven years*. *See* Compl. ¶ 104 (acquisition from May 2019). The most recent acquisitions Plaintiffs challenge are from 2024. *Id.* ¶ 112. Plaintiffs' "years-long delay in bringing the action was inexcusable." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 990 (N.D. Cal. 2020) (accepting defendant's argument). "The bare fact of delay creates a rebuttable presumption of prejudice." *Garabet*, 116 F. Supp. 2d at 1173 n.11 (citation omitted). Plaintiffs have not overcome that here. Indeed, Plaintiffs acknowledge that Bowlero has invested in its portfolio, enabling it to: (1) "drive procurement synergies" to lower capital expenditures, Compl. ¶ 71; (2) secure "exclusive products" from suppliers, *id.* ¶ 72; and (3) secure "volume contracts," *id.* ¶ 73. The "practical difficulty, if not impossibility, of unscrambling and returning the intermingled assets" constitutes overwhelming prejudice. *Garabet*, 116 F. Supp. 2d at 1173 (citation omitted). These requests for relief should be dismissed.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

## VII.    PLAINTIFFS FAIL TO DIFFERENTIATE BETWEEN BOWLERO DEFENDANTS

If any of Plaintiffs' claims survive, Plaintiffs should be required to replead those claims because presently, they impermissibly lump together Lucky Strike Entertainment Corporation and AMF Bowling Centers, Inc. as "Bowlero."  This failure to specify which entity took which alleged act is fatal.  *See, e.g.*, *Wilson v. Inslee*, 2022 WL 3094308, at *9 (E.D. Wash. Aug. 3, 2022) ("[T]he SAC frequently clumps 'Defendants' together, without detailing any specific action by each Defendant."); *North v. Mirra*, 2014 WL 345303, at *2 (W.D. Wash. Jan. 30, 2014) ("Plaintiffs' complaint is confusing and does not … state particular facts supporting how specific Defendants are responsible for [the alleged] wrongs."); *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) ("By lumping all Defendants together, Plaintiff has not stated sufficient facts to state a claim for relief that is plausible against *one* Defendant.") (emphasis in original; cleaned up).

## VIII. THE NATIONWIDE INJUNCTION CLAIMS AND CLASSES FAIL DUE TO LACK OF ARTICLE III STANDING

The nationwide injunction classes fail because they sweep in consumers whose claimed injuries are not traceable to the challenged acquisitions.  Plaintiffs propose two nationwide injunction classes, which are defined together to include every person who purchased bowling from a bowling center operator ***anywhere*** in the U.S. (that is, not limited to the 23 geographic markets alleged).  Compl. ¶¶ 240-241.  But Plaintiffs allege that bowling center competition occurs locally, that consumers generally will not travel more than 30 to 60 minutes to bowl, and that the competitive effects must be assessed in localized markets.  *Id.* ¶¶ 97-98.  Plaintiffs then allege 23 "regional" markets and (attempt to) tie each alleged anticompetitive effect to acquisition(s) within them.  *Id.* ¶ 170.

A plaintiff must establish Article III standing for each claim, *DaimlerChrysler*, 547 U.S. at 352, and standing requires an injury fairly traceable to the challenged conduct, *Lujan*, 504 U.S. at 560–61.  The nationwide classes sweep in consumers who bowled in markets where Bowlero made no challenged acquisition, holds no alleged market power, and is not alleged to have caused

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 29

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

any competitive harm.  A consumer who bowled in such a market has no injury traceable to Bowlero's alleged anticompetitive conduct.  The nationwide injunction classes should be dismissed.

## IX.   SIXTEEN REGIONAL CLAIMS AND CLASSES FAIL DUE TO LACK OF STANDING BECAUSE THEY LACK A CLASS REPRESENTATIVE

The named Plaintiffs allegedly purchased bowling and other items from a Defendant in only seven of the 23 identified regions.  In the other 16 regions, not a single named plaintiff is alleged to have made a purchase.  Classes based on those other 16 regions fail due to lack of Article III standing.  "At least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class."  *Williams v. Boeing Co.*, 517 F.3d 1120, 1127 (9th Cir. 2008) (emphasis original and citation omitted); *see also Hamilton*, 2023 WL 130485, at *3–4.  "[W]here it is clear from the pleadings that class representatives lack standing to assert class claims, courts in this District routinely dismisses [sic] those claims at the pleadings stage."  *Fodera v. Equinox Holdings, Inc.*, 2021 WL 1164799, at *3–4 (N.D. Cal. Mar. 26, 2021) (alterations original) (citing *Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 3d 1058, 1083–84 (N.D. Cal. 2014) (plaintiffs lacked standing to assert claims under state laws in which they did not reside); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (same); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (same); *De Los Santos v. Panda Exp., Inc.*, 2010 WL 4971761, at *6 (N.D. Cal. Dec. 3, 2010) (plaintiffs lacked standing to bring claims on behalf of putative class where they did not meet the class definition)).  The Court should dismiss claims and class allegations based on the following 16 regions for lack of a class representative with standing:  Santa Rosa, CA; Phoenix, AZ; Denver, CO; Wichita, KS; Omaha, NE-IA; Appleton, WI; Milwaukee, WI; Grand Rapids, MI; Philadelphia–Camden–Wilmington, PA-NJ-DE-MD; Reading, PA; Baltimore, MD; Richmond, VA; Charlotte–Concord–Gastonia, NC-SC; Jacksonville, FL; The Villages, FL; and Cape Coral, FL.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 30

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

## X.    MANY REGIONAL CLAIMS AND CLASSES ARE TIME-BARRED

Federal antitrust claims are subject to a four-year statute of limitations.  15 U.S.C. § 15b. An antitrust claim accrues at the time of the challenged acquisition.  *See Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) ("Section 7 action challenging the initial acquisition of another company's stocks or assets accrues at the time of the merger or acquisition.") (quoting *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1050 (8th Cir. 2000)); *Complete Ent. Resources, LLC v. Live Nation Ent., Inc.*, 2016 WL 3457177, at *1 (C.D. Cal. May 11, 2016) ("The statute of limitations to challenge a merger under section 7 of the Clayton Act is four years" from completion of the merger).  Plaintiffs filed this action on May 6, 2026.  Dkt. No. 1.  The challenged acquisitions in five regional areas closed before May 6, 2022, and, thus, the claims and classes based on acquisitions in those regions are outside the limitations period:  Reading, PA, Compl. ¶ 115; Baltimore, MD, *id.* ¶ 116; Richmond, VA, *id.* ¶ 118; Charlotte, NC, *id.* ¶ 119; Jacksonville, FL, *id.* ¶ 120.  Three regions, Seattle, WA; DC-VA-MD-WV; and Philadelphia, PA, identify acquisitions prior to and after May 6, 2022.  *See id.* ¶¶ 104, 114, 117.  All claims based on the acquisitions prior to May 6, 2022 are time-barred.

The post-acquisition price increases Plaintiffs identify do not restart the limitations period, because the continuing-violation doctrine does not reach price increases following a merger:  "the cause of harm is the merger itself.  The subsequent price increases do not further the company's monopoly...."  *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599–601 (6th Cir. 2014); *Midwestern Mach.*, 392 F.3d at 269–72.  District courts in this circuit agree.  *See Complete Ent.*, 2016 WL 3457177, at *1 (rejecting "continuing violation" doctrine in this context); *Reveal Chat*, 471 F. Supp. 3d at 995 (a merger is a "discrete act, not an ongoing scheme" and "once the merger is completed, the plan to merge is completed.") (cleaned up and citation omitted).  Because every challenged acquisition in these five regions closed before May 6, 2022, the associated claims and regional classes are time-barred.

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 31

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint as against Bowlero with prejudice.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

RESPECTFULLY SUBMITTED

this 1st day of July, 2026.

By: */s/ Alicia Cobb*
Alicia Cobb, WSBA #48685
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel.: (206) 905-7000
Fax: (206) 905-7100
aliciacobb@quinnemanuel.com

Alex Spiro (*pro hac vice*)
295 Fifth Ave., New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com

Kevin Y. Teruya (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel.: (213) 443-3000
Fax: (213) 443-3100
kevinteruya@quinnemanuel.com

Kevin J. Arquit (*pro hac vice*)
555 13th Street NW, Suite 600
Washington, D.C. 20004
Tel.: (202) 538-8000
Fax: (202) 538-8100
kevinarquit@quinnemanuel.com

Debra D. Bernstein (*pro hac vice*)
Ryan F. Swindall (*pro hac vice*)
1200 Abernathy Road NE
Building 600, Suite 1500
Atlanta, GA  30328
Tel.: (404) 482-3502
Fax: (404) 681-8290
debrabernstein@quinnemanuel.com
ryanswindall@quinnemanuel.com

*Attorneys for Defendants Lucky Strike
Entertainment Corporation and AMF Bowling
Centers, Inc.*

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 33

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*I certify that this memorandum contains 11,212 words, in compliance with the 11,400 word limit set by the Court.  See Dkt. 13.*

BOWLERO DEFS' MOT. TO DISMISS
(Case No. 2:26-cv-01535-RAJ) – 34

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000